## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES H. MORGAN,** | : | **CIVIL ACTION NO. 1:07-CV-1211** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **YORK CITY SCHOOL DISTRICT,** | : | |
| **JEFFREY KIRKLAND, CARLOS** | : | |
| **LOPEZ, TRESA DIGGS, DELORIS** | : | |
| **PENN, and AGENTS AND OFFICERS** | : | |
| **OF THE YORK CITY SCHOOL** | : | |
| **DISTRICT,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This is an employment discrimination action brought by plaintiff James H. Morgan ("Morgan") against his former employer, the York City School District, and several employees thereof. Morgan contends that he was the victim of race-based discrimination, workplace retaliation, and a hostile work environment, the sum total of which caused him to suffer emotional distress. In addition, Morgan accuses defendants of breaching their obligation to treat him fairly and to judge him on "the basis of individual merit, ability and the content of his character and not by the color of his skin." (Doc. 1 ¶¶ 10-11.) Presently before the court is defendants' motion for summary judgment on all claims. (Doc. 27.) For the reasons that follow, the motion will be granted.

# I.    **Statement of Facts**

The material facts underlying this matter are wholly undisputed.[1] James Morgan is a fifty-nine-year-old African American male who was hired by defendant the York City School District (the "District") in October 2002.  (See Doc. 27, Ex. I at 7, 12, 119; Doc. 29 ¶ 1.)  Morgan was initially retained to work as "Attendance and Security" officer, a position that was funded out of the District's general budget. (Doc. 29 ¶¶ 2, 4.)  In July 2004, however, a budget shortfall caused funding for Morgan's position to be terminated.  (Id. ¶¶ 3-4.)  The District transferred Morgan to a new position, "Safe School Manager," which was financed with surplus capital from a Title 1 safe schools grant.  (Id. ¶¶ 3, 5.)  Morgan was informed by the District

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiff, who is the nonmoving party.  See infra Part II.  However, Morgan has not disputed any of the material facts in this matter.  Local Rule 56.1 requires the nonmoving party's statement of facts to respond to the numbered paragraphs set forth in the moving party's statement, and to "include references to the parts of the record that support the statements."  L.R. 56.1.  Morgan disregards this requirement, and does not even address any of the numbered paragraphs set forth in defendants' statement of material facts.  (Compare Doc. 29 (defendants' Rule 56 statement), with Doc. 35 (Morgan's Rule 56 statement)).  The court will therefore adopt defendants' statement of facts in toto.  See L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); see also Harrison v. Ammons, Civ. A. No. 1:05-CV-2323, 2009 WL 2588834, at *1 n.1 (M.D. Pa. Aug. 19, 2009) (Conner, J.) (adopting moving party's statement of facts when nonmovant failed to comply with Local Rule 56.1); United States ex rel. Paranich v. Sorgnard, 286 F. Supp. 2d 445, 447 n.3 (M.D. Pa. 2003) (Conner, J.) (same), aff'd, 396 F.3d 326, 330 & n.5 (3d Cir. 2005).

at the time he assumed this new role that there were insufficient funds to maintain the position for more than one year.[2]  (Id. ¶ 6.)

The District's economic difficulties did not abate between the 2004 and 2005 fiscal year.  In June 2005, the District held a public budgetary meeting at which the York City School Board (the "Board") discussed the continuing financial viability of numerous administrative positions.  (See Doc. 27, Ex. I at 115; Doc. 29 ¶¶ 10, 12.) Morgan's role as Safe School Manager was among thirty job titles terminated for lack of funding.  (See Doc. 27, Ex. C at 30; Doc. 29 ¶ 9.)  Many of the individuals whose positions were eliminated were thereafter reassigned to roles specially funded by state and federal grant.[3]  (See Doc. 29 ¶ 13.)  Morgan described the situation thusly:  "There were a number of positions being eliminated . . . . I think there were a lot of non-instructional positions.  Basically everyone was being eliminated then reclassified.  A lot of those positions, a majority of them, were brought back under different names and are now still standing."  (Doc. 27, Ex. I at 114-15.)

After he learned that his job as Safe Schools Manager was to be terminated, Morgan applied for three replacement positions: (1) No Child Left Behind

---

[2] Morgan's salary was unchanged when he was transferred to the position of Safe School Manager.  (Id. ¶¶ 7-8.)

[3] Both male and female employees saw their job titles eliminated, and the budget cuts affected individuals of several different races.  (See Doc. 29 ¶ 16.) Morgan testified that he did not believe any employee's position other than his own was eliminated because of racial discrimination.  (Doc. 27, Ex. I at 117.)

Attendance Officer, (2) at-risk intervention counselor, and (3) acting administrative assistant.[4] (Doc. 29 ¶ 19.)  The District then offered Morgan the opportunity to select the position that he most preferred of the three to which he applied.  (Doc. 29 ¶ 20.)  Morgan opted for the administrative assistant role because the salary was comparable to his compensation as Safe Schools Manager.  (See Doc. 27, Ex. I at 86; Doc. 29 ¶ 21.)  However, he also understood that the position was temporary and would terminate December 31, 2005.  (Doc. 29 ¶ 22.)  Morgan commenced his duties as acting administrative assistant in September 2005 and, true to form, his assignment was terminated the final day of December 2005.[5]  (See Doc. 29 ¶¶ 1, 23, 39.)

On July 3, 2007, Morgan commenced the instant suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, 42 U.S.C. § 1983, and state tort and contract law.  (See Doc. 1.)  Morgan's complaint seeks relief for (1) unlawful discrimination on the basis of race, (2) workplace retaliation,

---

[4] Morgan was temporarily transferred to the No Child Left Behind Attendance Officer position starting July 1, 2005, so that he would suffer no lapse in his employment while attempting to secure permanent employment.  (See Doc. 27, Ex. I at 101-02; Doc. 29 ¶ 18.)

[5] During the first week of July 2005, Morgan filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") asserting that he was the victim of discrimination on the basis of race.  (See Doc. 29 ¶ 39.)  It is undisputed that defendants were unaware of this filing until September 2005, after Morgan had assumed his duties as administrative assistant.  (Id.)  Morgan also filed a workplace discrimination complaint with the United States Equal Employment Opportunity Commission ("EEOC") in September 2005.  (See Doc. 38, Ex. 8.)  Morgan received a right to sue letter from the EEOC on April 17, 2007.  (Doc. 1 ¶ 2.)

(3) intentional infliction of emotional distress, (4) breach of contract, and

(5) fostering a hostile work environment.  On October 20, 2008, defendants moved

for summary judgment on all claims.  (Doc. 27.)  The motion has been fully briefed

and is ripe for disposition.

## II.     <u>Standard of Review</u>

Through summary adjudication the court may dispose of those claims that do

not present a "genuine issue as to any material fact" and for which a jury trial

would be an empty and unnecessary formality.  <u>See</u> FED. R. CIV. P. 56(c).  The

burden of proof is upon the nonmoving party to come forth with "affirmative

evidence, beyond the allegations of the pleadings," in support of its right to relief.

<u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P.

56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence

must be adequate, as a matter of law, to sustain a judgment in favor of the

nonmovant on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57

(1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89

(1986); <u>see also</u> FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause

of action proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

## III.     <u>Discussion</u>

Title VII of the Civil Rights Act makes it unlawful for an employer "to

discriminate against any individual with respect to compensation, terms,

conditions, or privileges of employment, because of such individual's race, color,

religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  In both discrimination

5

and retaliation cases, proof at the summary judgment stage adheres to the well-established McDonnell Douglas burden-shifting approach. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). McDonnell Douglas requires Title VII plaintiffs to establish a prima facie case of racial discrimination, to wit: that (1) the plaintiff was a member of a protected class, (2) he or she was qualified for the position, (3) he or she suffered an adverse employment action, and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999); McDonnell Douglas, 411 U.S. at 802.

Once a plaintiff satisfies the prima facie requirements, the burden of production shifts to the defendant, who must rebut the inference of wrongdoing with evidence of a legitimate, non-discriminatory or non-retaliatory purpose for the action in question. McDonnell Douglas, 411 U.S. at 802-03; Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999) (citing McDonnell Douglas, 411 U.S. at 802); Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997). The defendant's burden to prove a legitimate non-discriminatory purpose is relatively light. Terrell v. City of Harrisburg Police Dep't, 549 F. Supp. 2d 671, 681 (M.D. Pa. 2008); see also Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1996). Moreover, the defendant is only required to prove that its actions could have been motivated by the proffered legitimate, non-discriminatory purpose; proof of actual causation is not required. Iadimarco, 190 F.3d at 157.

6

If the defendant is successful in meeting its burden, the burden shifts back to the plaintiff, who must then "produce evidence sufficient to persuade the factfinder by a preponderance of the evidence that the employer nevertheless harbored a discriminatory intent." <u>Delli Santi v. CNA Ins. Cos.</u>, 88 F.3d 192, 199 (3d Cir. 1996). The plaintiff may meet this burden by presenting evidence from which a reasonable factfinder could "either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Keller</u>, 130 F.3d at 1108. Essentially, the plaintiff must show that the defendant's proffered reasons for the actions taken are merely pretext or cover-up, masking the defendant's true discriminatory intent. <u>See</u> <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 432 (3d Cir. 2001); <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994). In this fashion, the ultimate burden to prove discrimination on the basis of the protected class remains with the plaintiff at all times. <u>See</u> <u>Barber v. CSX Distrib. Servs.</u>, 68 F.3d 694, 698 (3d Cir. 1995).

In the instant matter, Morgan claims that he suffered unlawful discrimination on the basis of race. Additionally, he alleges that defendants retaliated against him for filing a complaint with the Pennsylvania Human Relations Commission ("PHRC"), and that he was subjected to a hostile work environment. Finally, Morgan asserts claims under state law for breach of contract and intentional infliction of emotional distress. The court will address these claims *seriatim*.

7

### A. <u>Race-Based Discrimination</u>

Title VII affords explicit protection to employees from adverse employment actions based upon race. <u>See</u> § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin."). To withstand a motion for summary judgment on a disparate treatment claim, a plaintiff must establish that his or her membership in a protected class "played a role in the employer's decision-making process and had a determinative influence on the outcome of that process." <u>Monaco v. Amer. Gen. Assurance. Co.</u>, 359 F.3d 296, 300 (3d Cir. 2004). A plaintiff may meet this burden with either direct evidence, <u>see</u> <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 261-79 (1989) (O'Connor, J., concurring), or circumstantial evidence, <u>see</u> <u>McDonnell Douglas</u>, 411 U.S. at 802. In the instant case, Morgan has not provided direct evidence of discrimination;[6] therefore, the court must apply the three step burden-shifting analysis set forth in <u>McDonnell Douglas</u> and described above.

---

[6] Direct evidence is "evidence that proves an ultimate fact in the case without any process of inference." <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 930 (3d. Cir. 1997). An employer who discriminates "will almost never announce a discriminatory animus or provide employees or courts with direct evidence of discriminatory intent." <u>Iadimarco v. Runyon</u>, 190 F.3d 151, 157 (3d Cir. 1999). A plaintiff who wishes to establish a prima facie case of discrimination using direct evidence "faces a high hurdle." <u>Connors v. Chrysler Fin. Corp.</u>, 160 F.3d 971, 976 (3d Cir. 1998). The court has found no evidence of record to suggest that Morgan has cleared this hurdle.

Before delving into the <u>McDonnell Douglas</u> analysis, however, the court will explicitly delineate those instances in which Morgan claims he suffered race-based discrimination. According to the complaint, Morgan's position as Safe Schools Manager was eliminated in July 2005 and he was thereafter "demoted" to a position as administrative assistant. (Doc. 1 ¶¶ 16-17.) Although his salary was reduced, Morgan testified that it nonetheless remained "close" to that which he earned as Safe Schools Manager. (<u>See</u> Doc. 27, Ex. I at 86.) Morgan alleges that a Caucasian co-worker also had her job title eliminated in July 2005, but was reassigned—without decrease in pay—to serve as coordinator of the No Child Left Behind program. (Doc. 1 ¶¶ 21-26.) Morgan contends he was better qualified for this position.[7] (<u>Id.</u> ¶ 33.) Additionally, Morgan asserts that one Caucasian male, one Caucasian female, and one Hispanic male saw their respective positions eliminated

---

[7] In his complaint, Morgan initially claimed that he was better qualified to fill the role of at-risk intervention counselor, (Doc. 1 ¶ 34), but he has now relinquished this claim. Indeed, Morgan has since admitted that he applied for the role as at-risk counselor, (Doc. 29 ¶ 19); that he was given the opportunity to select the position that was his top choice among those to which he applied, (<u>id.</u> ¶ 20); and that he chose instead the administrative assistant position, (<u>id.</u> ¶ 21). Thus, based upon his own admissions, Morgan had the opportunity to serve as at-risk counselor, but opted to pursue a different opportunity. Moreover, Morgan does not once mention the at-risk counselor position in his brief in opposition to summary judgment. (<u>See</u> Doc. 34.) Having neglected to present affirmative evidence on the matter subsequent to filing his complaint, the court will assume that Morgan is no longer asserting that he was better qualified for the position of at-risk counselor. <u>See</u> <u>Anderson</u>, 477 U.S. at 250-52 (requiring nonmovant to come forward with affirmative evidence beyond his or her pleadings in support of the claim alleged in order to defeat summary judgment).

in July 2005 during budget cuts, but that all three individuals were reassigned at no reduction in pay.  (See id. ¶¶ 32, 35-40.)

Turning to the prima facie case, defendants do not dispute that Morgan belongs to a protected class on the basis of his race.  The court also concludes that Morgan suffered an adverse employment action when his position as Safe School Manager was terminated, he was reassigned to a position as administrative assistant, and his salary was reduced.  See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 749 (1998) (describing an adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment or a decision causing a significant change in benefits"); Storey v. Burns Int'l Servs., 390 F.3d 760, 764 (3d Cir. 2004) (explaining that an adverse employment action is "an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment" (quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001))).  The other two prongs of the prima facie case—Morgan's qualifications and the existence

of an inference of discrimination—are not supported by record evidence.[8]  The

court will examine each remaining requirement in turn.

---

[8] Morgan places significant reliance upon investigative letters sent by PHRC representatives to various current or former employees of the District during the PHRC's investigation of Morgan's complaint.  (See Doc. 34 at 4-7; Doc. 38, Exs. 1-6.) In each of the letters, a PHRC representative summarizes a series of statements allegedly provided by the District employee during an earlier telephone conversation.  The PHRC representative then requests that the employee in question review the statements, sign the letter indicating that the statements are accurate, and return the letter to the PHRC.  In this fashion, the statements of the employees—which Morgan offers for their truth—are hearsay within hearsay. Hearsay statements "can be considered on a motion for summary judgment if they are capable of admission at trial."  Shelton v. Univ. of Med. & Dentistry, 223 F.3d 220, 223 n.2 (3d Cir. 2000); Judkins v. HT Window Fashions Corp., 624 F. Supp. 2d 427, 434 (W.D. Pa. 2009).  In order for a double hearsay statement to be admissible, each part of the combined statement must conform with an exception to the hearsay rules.  FED. R. EVID. 805.  Morgan makes no attempt to lay a foundation for each statement's entry, or to justify admission under Federal Rule of Evidence 805. Furthermore, many of the proffered double hearsay statements are of suspect reliability.  For example, Morgan offers the statements of Robert Mitten and Mary Tribue.  (See Doc. 38, Exs. 2-3.)  Neither of these individuals was employed by the District during the events in question.  Two other letters record the statements of Dwayne Raber and Joyce Royster.  (See id., Exs. 1, 6.)  It is not clear from the record who these individuals are or the nature of their connection to Morgan and the District.  Given these evidentiary concerns, the court will not consider any of the statements contained in the PHRC letters.

### 1.    Morgan's Qualification for No Child Left Behind Coordinator

Morgan claims that in July 2005, he was improperly passed over for the position of No Child Left Behind coordinator, an employment opportunity that was instead offered to a Caucasian female named Debra Beshore ("Beshore"). (Doc. 1 ¶ 33.) However, Morgan acknowledges that he did not meet the objective qualifications required to fill this position. (See Doc. 29 ¶ 28.) The job posting demanded, *inter alia*, a minimum five years' employment experience in public schools; a working knowledge of word processing, spreadsheet, and database programs, and; knowledge of current legal education-based initiatives, or three years' experience in communications media managing institutional public relations. (Id.) Morgan possessed none of these qualifications, and he ultimately failed to submit an application for the position.[9] (Id. ¶¶ 26, 28; see also Doc. 27, Ex. I at 90-

---

[9] It is settled law in this circuit that an employer who departs from a job posting's objective criteria in making an employment decision thereby establishes different qualifications against which an applicant for the position must be measured. See Scheidemantle v. Slippery Rock Univ., 470 F.3d 535, 540 (3d Cir. 2006). Morgan does not claim that the District departed from objective criteria. Rather, he contends that the objective qualifications for the position were personally written by Beshore and adapted to her personal attributes, thus ensuring that she was hired for the job. Morgan points the court to no evidence in support of his assertion, (see Doc. 34 at 6-7), and the record evidence proffered by defendants presents a significantly more benign narrative. Pamela Harrison Bender ("Bender"), the District's federal programs director at the time in question, testified that because the coordinator position was federally funded, several job criteria were required by law. (See Doc. 27, Ex. E at 35.) Bender testified that the remainder of the job description was written by multiple District employees, including herself. (See id. at 32-33.) According to Bender, any input that may have been provided by Beshore occurred at a committee meeting involving several individuals. (See id. at 33.) Thus, the evidence shows that the qualifications set forth in the job description were part federal requirement, and part collaborative

93.) Accordingly, Morgan's attempt to anchor his disparate treatment claims to his failure to obtain the No Child Left Behind coordinator position falters at the prima facie stage.

## 2. **Inference of Discrimination**

The Third Circuit has made clear that "the precise elements of a plaintiff's *prima facie* case may vary with the particular circumstances." Waldron v. SL Indus., 56 F.3d 491, 494 n.3 (3d Cir. 1995) (citing, *inter alia*, McDonnell Douglas, 411 U.S. at 802 n.14). Accordingly, a plaintiff can satisfy the fourth element of a prima facie case in a variety of ways, several of which are potentially implicated by Morgan's complaint and Rule 56 briefing.[10] For instance, a plaintiff whose employment was terminated may state a prima facie case by showing that his former employer "sought applicants with the plaintiff's qualifications." Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 939 (3d Cir. 1997) (citing Olson v. GE Astrospace, 101 F.3d 947, 951 (3d Cir. 1996)). Morgan presents no evidence supporting a prima facie case under this standard. Rather, the evidence indicates

_____

District creation. The record evidence does not support Morgan's accusation that the No Child Left Behind coordinator job description was altered by Beshore so that she would be the best qualified candidate for the position. Furthermore, Morgan's failure to come forward with evidence to support his suppositions is fatal in light of the proof proffered by defendants, and the court must reject his unsupported contention. See Anderson, 477 U.S. at 250-52 (requiring nonmovant to come forward with affirmative evidence beyond his or her pleadings in support of the claim alleged).

[10] Several methods of proof are *potentially* implicated because Morgan's papers do not specify the theory under which he proceeds.

that when Morgan lost his job as Safe Schools Manager, the position was eliminated altogether due to a budget shortfall. (See Doc. 29 ¶ 9.) There is no evidence that the District ever revived the position or sought applicants for Safe School Manager subsequent to Morgan's termination.

An applicant who was never hired may make out his prima facie case by showing that he was rejected for employment, and that his rejection was "accompanied, or followed by, a filling of the job with a person not belonging to the protected category." Olson, 101 F.3d at 951. Such a plaintiff could also show that "after [his] rejection, the position remained open and the employer continued to seek applicants from persons of [the plaintiff's] qualifications." McDonnell Douglas, 411 U.S. at 802. Morgan has presented no evidence suggesting that he was rejected from a job for which he was qualified. In fact, it is undisputed that Morgan applied for three positions in July 2005 and that the District permitted him to select the position that he preferred most. (See Doc. 29 ¶ 20.) Morgan testified that he selected the acting administrative assistant position because the salary was comparable to that he had been earning as Safe Schools Manager. (See Doc. 27, Ex. I at 86.)

A third way in which a plaintiff may satisfy the inference of discrimination prong is by claiming that he was treated differently than similarly situated coworkers. "[W]hether an individual can satisfy the 'similarly situated' requirement triggers a fact-intensive inquiry based on a whole constellation of factors facing that individual employee." Monaco, 359 F.3d at 306. Similarly

situated employees are those who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 603 (M.D. Pa. 2002) (internal quotations omitted); see also Red v. Potter, No. 05-5256, 2006 WL 3349563, at *2 (3d Cir. 2006) (stating that "in order to show that an employee is 'similarly situated,' all of the relevant aspects of employment need to be nearly identical"). "In determining whether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action." Simpson v. Kay Jewelers, 142 F.3d 639, 646 (3d Cir. 1998).

In the instant matter, Morgan admits that his position as Safe Schools Manager was eliminated because of a budgetary shortfall. (Doc. 29 ¶ 9.) He also acknowledges that at least thirty positions were terminated in July 2005 for financial reasons. (See id. ¶ 12; see also Doc. 27, Ex. C at 30.) These job cuts affected individuals of various different races. (See Doc. 29 ¶ 16.) Several employees who lost their jobs were thereafter reassigned. (Doc. 29 ¶ 13.) While some of these individuals were reassigned at their former salary, Morgan claims that he was forced to choose among lower-paying jobs. He identifies two Caucasian employees and an individual of Hispanic origin who he alleges were treated differently by defendants during this reassignment period:  Beshore, Dennis

15

Lehman, and Arnaldo Torres.[11] (Doc. 1 ¶¶ 21-28, 35-40.) It is unnecessary to analyze

Morgan's claims with respect to Beshore, for Morgan lacked the qualifications

necessary to perform Beshore's job, see supra Part II.A.1; therefore, Beshore and

Morgan are not similarly situated as a matter of law, see Ogden, 226 F. Supp. 2d at

603.

Dennis Lehman ("Lehman"), who is Caucasian, was transferred from

assistant principal at Hannah Penn Middle School to a teaching position at Smith

Middle School at some point in 2005. (See Doc. 29 ¶ 32; Doc. 27, Ex. I at 108-09.) By

virtue of their differing job functions alone, Lehman and Morgan cannot be

considered similarly situated; the record is devoid of evidence that both individuals

"have dealt with the same supervisor, have been subject to the same standards and

have engaged in the same conduct without such differentiating or mitigating

circumstances that would distinguish their conduct or the employer's treatment of

them for it." Ogden, 226 F. Supp. 2d at 603. Lehman's role as an administrator and

teacher definitively establishes that he was not similarly situated to Morgan, and

Morgan fails to come forth with any competent evidence to the contrary.[12] See

---

[11] Morgan's complaint also identifies a third Caucasian female who "was transferred from Executive Secretary to a lower paying position of clerk and [] was allowed to keep her same [sic] Executive Secretary pay." (Doc. 1 ¶ 32.) This individual is nowhere identified in Morgan's Local Rule 56.1 statement or summary judgment papers; the court is thus unable to investigate the veracity of Morgan's pleading, and it will be disregarded.

[12] Morgan also proffers no admissible evidence that Lehman maintained his salary after he was transferred, but relies entirely upon inadmissible hearsay. See Shelton, 223 F.3d at 223 n.2. For example, Morgan testified during his deposition as

<u>Anderson</u>, 477 U.S. at 249-50 (explaining the nonmovant's burden to set forth specific facts, beyond those recited in the pleadings, demonstrating that there is a genuine factual issue for trial). In short, a comparison of the two employees is simply not instructive.

Arnaldo Torres ("Torres"), an Hispanic employee, was reassigned to the position of No Child Left Behind Attendance Officer, presumably in the summer of 2005. This is the same position that Morgan was offered and rejected based upon what Morgan considered an inadequate salary. (Doc. 29 ¶ 37; <u>see</u> Doc. 27, Ex. I at 85-86.) Morgan's theory with respect to Torres is somewhat obscure; he offers no

---

follows:

> Q:    And how did you become aware of the agreement of maintaining [Lehman's] salary?
> A:    The individuals who knew the information. And there were a number of individuals who shared that information with me.
> Q:    Who would that be?
> A:    Mary Tribue would have been one of them.
> Q:    Was she on the school board at the time?
> A:    Yes. Beverly Atwater would have been one of them. I don't know any other people right offhand, but I had heard it from a number of individuals. . . .
> Q:    So you're familiar with what his salary was when he was an assistant principal and what it is at the teaching position?
> A:    No. I just know that apparently he kept his salary as an administrator.

(Doc. 27, Ex. I at 109-10.) It is apparent from Morgan's strained recollection that the second-hand statements he offers for the truth of the matter asserted are unreliable. What is more, Morgan deposed both Mary Tribue and Beverly Atwater, yet he directs the court to no passage in which either of these witnesses confirm Morgan's narrative in sworn deposition testimony. This failure to come forth with affirmative evidence in support of his claim warrants summary dismissal on this claim. <u>See</u> <u>Anderson</u>, 477 U.S. at 249-50.

evidence that Torres was paid a different salary than that which Morgan was offered to fulfill the same position. Nor does he offer any evidence that Torres was similarly situated but treated differently. In the absence of any such affirmative evidence in support of his position, the court cannot infer that Morgan was treated disparately. See Anderson, 477 U.S. at 249-50 (explaining the nonmovant's burden to set forth specific facts, beyond those recited in the pleadings, demonstrating that there is a genuine factual issue for trial).

In sum, Morgan presents insufficient evidence to make out a prima facie case of race-based employment discrimination. As is perhaps apparent from the discussion above, Morgan is long on accusation but short on evidence. Nowhere is this captured better than in Morgan's own testimony, wherein he describes the crux of his racial discrimination claim:

> Q:    Who advised you that your position of [S]afe [S]chool [M]anager was eliminated based upon your race?
> A:    I took a look at what was occurring and growing up black in our society, I mean, it's just an innate vision that you have; . . . . I'm able to look and see, you know, different factors that are played into what goes on; where favoritism is played and how I'm being affected and why things may be done the way they are and where it's coming from. It was just a vision that was laid on my heart . . . .

(Doc. 27, Ex. I at 119.) At this stage of the litigation, such "visions" are insufficient to establish civil rights liability—Morgan must come forth with actual evidence. He has failed to do so, and summary judgment is therefore appropriate.

B.    **Workplace Retaliation**

Under Title VII's antiretaliation provision, an employer is forbidden from "discriminating against any of his employees" because those individuals have "opposed any practice made an unlawful employment practice" by Title VII's. § 2000e-3(a). In order to establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 231-32 (3d Cir. 2007); Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006). If a plaintiff establishes a prima facie case of retaliation, McDonnell Douglas burden-shifting then applies. See Shellenberger v. Summit Bancorp., Inc., 318 F.3d 183, 187 (3d Cir. 2003).

With respect to the first prong in the analysis, an employee engages in protected Title VII activity when he "opposes" workplace activity that Title VII prohibits. See Slagle v. County of Clarion, 435 F.3d 262, 266 (3d Cir. 2006). At the time of his opposition, the employee must possess a good faith belief that the practices opposed were unlawful under Title VII. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001). Morgan claims that he was given the position of acting administrative assistant in retaliation for filing a complaint with the PHRC in July 2005. (Doc. 1 ¶¶ 43-48.) Filing a complaint with the PHRC alleging racial discrimination in the workplace constitutes protected activity under Title VII if the

19

employee has a good faith belief that the alleged discrimination is unlawful. <u>See</u>
<u>Clark</u>, 532 U.S. at 270-71; <u>Slagle</u>, 483 F.3d at 268. Morgan has not presented
sufficient evidence to show that he had a good faith basis for filing the complaint; in
fact, he has presented nothing more than the fact of his employment termination.
Morgan does not point to a single racial remark or racist act, or any such remarks
or acts that could conceivably be construed as such. His evidence is simply
inadequate.

Even if Morgan had sufficiently proven that he engaged in protected activity,
however, the third prong in the analysis—causation—is dispositive in defendants'
favor. Morgan admits that defendants received no notice of his PHRC complaint
until September 2005, *after* he commenced work as administrative assistant. It was,
of course, impossible for defendants to retaliate against Morgan on the basis of an
act for which they lacked knowledge at the time of the purported retaliatory
conduct. <u>See Weston</u>, 251 F.3d at 430 (requiring a causal link between the
protected activity and the alleged adverse action). Morgan makes no attempt to
explain this causal conundrum, and the court can only conclude that defendants
are entitled to summary judgment on this claim.

### C.    **Hostile Work Environment**

Morgan's final federal cause of action is one for hostile work environment. In
order for a plaintiff to make out a hostile work environment claim pursuant to Title
VII, he must demonstrate: (1) that he suffered intentional discrimination because of
his membership in a protected class; (2) the discrimination was pervasive and

regular; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person of the same sex or race in that position; and (5) there is a basis for respondeat superior liability. West v. Phila. Elec. Co., 45 F.3d 744, 753-54 (3d Cir. 1995); Johnson v. Cmty. Coll. of Allegheny County, 566 F. Supp. 2d 405, 444 (W.D. Pa. 2008). According to the Supreme Court, "conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); see also Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990) (explaining that the plaintiff must establish "by the totality of the circumstances, the existence of a hostile or abusive working environment which is severe enough to affect the psychological stability of a minority employee").

The record simply contains no evidence establishing that defendants fostered a hostile work environment. For example, Morgan has not identified any statements or actions suggestive of intentional discrimination, let alone those that occurred on a pervasive and regular basis. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (holding that isolated incidents, unless sufficiently serious, do not create an objectively hostile or abusive environment); Andrews, 895 F.2d at 1482 (requiring the court to consider "the totality of the circumstances"); Tucker v. Merck & Co., Inc., No. Civ. A. 03-5015, 2004 WL 1368823, at *15 (E.D. Pa. June 17, 2004) (granting summary judgment on plaintiff's claim when he could not "cite a single incident involving the utterance of a racial epithet, the use of a racist symbol,

or *any* direct comment concerning race"). Instead, Morgan offers three letters produced by the PHRC containing inadmissible hearsay and conclusory, second-hand accusations of discrimination. <u>See</u> <u>supra</u> Part III.A; <u>see also</u> <u>Shelton v. Univ. of Med. & Dentistry</u>, 223 F.3d 220, 223 n.2 (3d Cir. 2000) (requiring that hearsay offered at summary judgment be admissible). Morgan's failure to develop competent evidence is especially glaring in light of his ample opportunity to take sworn deposition testimony or procure affidavits from the very employees whose statements are represented via PHRC letter. This serves as yet another example of Morgan's failure to come forth with affirmative evidence supportive of his claim. <u>See</u> <u>Anderson</u>, 477 U.S. at 249-50 (explaining the nonmovant's burden to set forth specific facts, beyond those recited in the pleadings, demonstrating that there is a genuine factual issue for trial). Summary judgment is warranted.

      **D.**    **<u>State Law Claims</u>**

In addition to his federal claims, Morgan contends that defendants committed a breach of contract and intentionally inflicted emotional distress upon him in contravention of state law. (<u>See</u> Doc. 1 ¶¶ 49-62.) However, the court has granted summary judgment on each cause of action implicating a federal question; to retain federal jurisdiction over what would be purely an issue of state law does not serve the interests of judicial economy, convenience, fairness to the instant parties, or comity, <u>see</u> <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988) (stating that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction

doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"); see also Annulli v. Panikkar, 200 F.3d 189, 202 (3d Cir. 1999).  Disposition of the remaining claims is more suitable to a state forum.

IV.     **Conclusion**

The record evidence presented by Morgan in support of his prima facie case is exceedingly thin and does not support his claims of racial discrimination, workplace retaliation, and a hostile work environment under Title VII.  The record is replete with evidence that the District made difficult employment decisions in the shadow of serious budgetary shortfalls.  This was, indeed, unfortunate—but it does not render the District liable for violation of Morgan's civil rights.

An appropriate order follows.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:        December 16, 2009

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES H. MORGAN,          :    CIVIL ACTION NO. 1:07-CV-1211
                                    :
              Plaintiff    :    (Judge Conner)
                                    :
      v.                       :
                                    :
**YORK CITY SCHOOL DISTRICT,**  :
**JEFFREY KIRKLAND, CARLOS**  :
**LOPEZ, TRESA DIGGS, DELORIS**  :
**PENN, and AGENTS AND OFFICERS** :
**OF THE YORK CITY SCHOOL**      :
**DISTRICT,**                         :
                                    :
           Defendants  :

## <u>ORDER</u>

AND NOW, this 16th day of December, 2009, upon consideration of

defendants' motion (Doc. 27) for summary judgment, and for the reasons set forth

in the accompanying memorandum, it is hereby ORDERED that:

1.    Defendants' motion (Doc. 27) for summary judgment is GRANTED.
    <u>See</u> FED. R. CIV. P. 56(c).

2.    The Clerk of Court is directed to enter JUDGMENT in favor of
    defendants and against plaintiff on all claims.

3.    The Clerk of Court is directed to CLOSE this case.


                                       _S/ Christopher C. Conner_
                                       CHRISTOPHER C. CONNER
                                       United States District Judge